**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | |
|---|---|
| PERSONALIZED MEDIA COMMUNICATIONS, LLC. <br><br>                      Plaintiff, <br><br> v. <br><br> TCL CORP. and TCL MULTIMEDIA TECHNOLOGY HOLDINGS LTD. <br><br>                 Defendants. | Civil Action No.: 2:17-cv-433-JRG <br><br> **JURY TRIAL DEMANDED** |

## <u>PLAINTIFF PERSONALIZED MEDIA COMMUNICATIONS, LLC'S OPENING CLAIM CONSTRUCTION BRIEF</u>

**Error! Unknown document property name.**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ....................................................................**Error! Bookmark not defined.**

I.      TERMS IN DISPUTE............................................................................................... 1

1.    register memory ...................................................................................................... 1

2.    Stored function invoking data.................................................................................. 2

3.    media / medium...................................................................................................... 2

4.    Predetermined identifier......................................................................................... 3

5.    among said plurality of programmable processors .................................................. 5

6.    command[s].............................................................................................................. 6

7.    Control[ling] said digital switch .............................................................................. 8

8.    Order of steps of claim 9 of the 6'649 patent ......................................................... 9

9.    Order of steps of claim 10 of the 6'649 patent ..................................................... 10

<u>**TABLE OF AUTHORITIES**</u>

**Page(s)**

**Cases**

*Arlington Indus., Inc. v. Bridgeport Fittings, Inc.*,
    632 F.3d 1246 (Fed. Cir. 2011)....................................................................................8

*Becton, Dickinson & Co. v. Tyco Healthcare Grp., LP*,
    616 F.3d 1249 (Fed. Cir. 2010)....................................................................................4

*Comcast Cable Communications, LLC v. Sprint Communications Co.*,
    38 F. Supp. 3d 589 (E.D. Pa. 2014) ........................................................................7, 8

*Elekta Instrument S.A. v. O.U.R. Scientific Int'l, Inc.*,
    214 F.3d 1302 (Fed. Cir. 2000)....................................................................................5

*Epistar Corp. v. ITC*,
    566 F.3d 1321 (Fed. Cir. 2009)....................................................................................6

*Interactive Gift Express, Inc. v. Compuserve Inc.*,
    256 F.3d 1323 (Fed. Cir. 2001)....................................................................................9

*Lexington Luminance LLC v. Amazon Digital Servs.*,
    No. 12-cv-12216-DKC, 2016 U.S. Dist. LEXIS 46023 (D. Mass. Apr. 4, 2016) ...................7

*MBO Labs., Inc. v. Becton, Dickinson & Co.*,
    474 F.3d 1323 (Fed. Cir. 2007)....................................................................................7

*Personalized Media Communications, LLC v. Apple, Inc. et. al.*,
    2:15-cv-01366 (E.D. Tex. Oct. 25, 2016) .....................................................................1

*Power Mosfet Techs., L.L.C. v. Siemens AG*,
    378 F.3d 1396 (Fed. Cir. 2004)....................................................................................4

**Other Authorities**

37 C.F.R. §1.129(a)...........................................................................................................6

*McGraw-Hill Dictionary of Scientific and Technical Terms* (3d ed. 1984) ................................5

U.S. Patent No. 4,694,490............................................................................................2, 3, 4

U.S. Patent No. 7,747,217........................................................................................... *passim*

U.S. Patent No. 7,752,650............................................................................................1, 7

U.S. Patent No. 8,675,775....................................................................................................1

U.S. Patent No. 8,711,885............................................................................................1, 5

*Webster's New Collegiate Dictionary* (1981)...........................................................................5

Plaintiff Personalized Media Communications, LLC ("PMC") presents this opening claim construction brief relating to the claim terms in dispute between the parties in the litigation against TCL Corp. and TCL Multimedia Technology Holdings Ltd.  The patents at issue in the case are: U.S. Patent Nos. 7,747,217 (the "'217 Patent"), 7,752,649 (the "2'649 Patent"), 7,752,650 (the "'650 Patent"), 7,856,649 (the "6'649 Patent"), 8,675,775 (the "'775 Patent"), and 8,711,885 (the "'885 Patent").[1] All six patents have the identical specification and the '217 Patent specification is used here as the exemplary specification. The parties have agreed on the constructions for 27 terms, as set forth in Exhibit A to the Joint Claim Construction and Prehearing Statement (Dkt. No. 46-1).  The 9 terms that remain in dispute are set forth in Exhibit B to the Join Claim Construction and Prehearing Statement (Dkt. No. 46-2), and are discussed below.

# I.    TERMS IN DISPUTE

## 1.  register memory

| PMC | TCL |
|---|---|
| Memory to temporarily store information for use in later operations. | A memory in a processor to temporarily store information for use in later operations |

In related litigation *Personalized Media Communications, LLC v. Apple, Inc. et. al.*, 2:15-cv-01366, this Court construed "register memory" to mean "memory to  temporarily store information for use in later operations" – the construction PMC proposes here.  The Court explicitly considered "whether the term is limited to memory in processors." Ex. 7, Memorandum and Order, dated 10/25/16 ("Phase 1 Order") (Dkt. 246 at 75, 2:15-cv-01366).  The Court, relying on the '217 specification, answered this question in the negative stating: "There is no disavowal limiting the ordinary meaning of 'register memory' to only processors."  *Id.* at 76.  *See also* Ex. 8, Memorandum and Order dated 10/26/16 ("Phase 2 Order") (Dkt. 110 at 76, 2:15-cv-01754) ("This passage does not mandate that the "aforementioned register memories" may only have strictly one function.").  The following intrinsic cites support the Court's construction: '217 Patent, 19:46-20:3, 20:26-33, 35:47-36:3, 49:29-32, 54:61-64.  There is no basis to

---

[1] The '217 Patent is attached hereto as Ex. 1; the 2'649 Patent is attached hereto as Ex. 2; the '650 Patent is attached hereto as Ex. 3; the 6'649 Patent is attached hereto as Ex. 4; the '775 Patent is attached hereto as Ex. 5; and the '885 Patent is attached hereto as Ex. 6.

## 2. **Stored function invoking data**

| PMC | TCL |
|---|---|
| Stored data that invokes a function | Indefinite |

This Court has already rejected the argument that the term "stored function invoking data" is indefinite, finding that Defendants had wrongly viewed "the claim term in isolation without consulting the surrounding language." Ex. 7, Phase 1 Order at 80. Specifically, the Court observed that claim 39 "calls out 'comparing stored function invoking data to the contents of said at least one register memory.'" *Id.* at 80-81. The Court construed the term to mean "stored data that invokes a function" – the construction PMC urges here. *Id.* at 81. The following intrinsic cites support the Court's construction: '217 Patent, FIGs. 2E-2K, 12:4-13:4, 23:33-57, 33:33-43:36, 49:10-31, 49:38-56, 51:64-52:20, 143:60-144:10, 145:23-40, 241:27-242:14, 243:15-23, 243:37-244:24, 268:54-269:23. There is no basis to depart from the Court's prior construction of the term.

## 3. **media / medium**

| PMC | TCL |
|---|---|
| Forms of electronically transmitted programming, such as audio, video, graphics, text, and/or computer presentations. | Channel[s] of communication, such as radio, television, broadcast print, or Internet/channel of communication, such as radio, television, broadcast print, or Internet. |

The parties have two disputes regarding this term: (1) the general definition of media/medium; and (2) what examples should be included in the construction. As to the first issue, this Court has already construed the general definition of media/medium to be **"forms of electronically transmitted programming."** Ex. 8, Phase 2 Order at 25. There is no basis to depart from the Court's prior construction of the same term.

As to the second issue, while the Court agreed that examples of such "forms of electronically transmitted programming" include "audio, video, graphics, and/or text," Ex. 8, Phase 2 Order at 25, the Court did not explicitly include "computer presentations" in its list of examples in its prior ruling. The Court's reasoning, however, as well as the intrinsic evidence, support the inclusion of "computer presentations."

For example, U.S. Patent No. 4,694,490 (the "'490 Patent"), which is the parent of the '217 Patent,

2

discloses that "[m]ultimedia presentations may be co-ordinated in time and/or in place as, for example, when real-time video programing is co-ordinated <u>with presentations from a microcomputer working with data supplied earlier</u>." Ex. 9, '490 Patent, col. 3:56-60.  In the '217 Patent, the "Background of the Invention" section also makes clear that conventional "broadcast" media could be combined with "the capacity of <u>*computers*</u> to process and output user specific information," and that this new "media" would be defined as combined media. <u>Ex.1</u>, '217 Patent, 1:55-65 (emphasis added). PMC's definition captures the intention of the invention for "media" to encompass not only broadcast media, but also data that could be processed and output by a computer, such as "audio, video, graphics, text, and/or computer presentations." *See also id.*, 167:52-55 ("The stations so automated may transmit any form of <u>electronically</u> <u>transmitted programming</u>, including television, radio, print, data, and <u>combined medium programming</u>" (emphasis added)).

The Court's previous examples of "audio, video, graphics, and/or text," while consistent with this interpretation, do not capture "computers" and their role in the "combined medium programming" expressly contemplated by the patents. Multimedia representations, *i.e.* computer presentations, are not clearly captured in the examples "audio, video, graphics, and/or text."  Accordingly, the example of computer presentations should be added to the list of examples.

### 4. **Predetermined identifier**

| PMC | TCL |
|---|---|
| A digital identifier having a previously established value. | Identifier determined prior to receiving signals at the receiver. |

Claim 1 of the '217 patent requires "comparing said processed identifier to a ***predetermined identifier, wherein said predetermined identifier is determined at a time prior to receiving said plurality of signals*** (emphasis added).  <u>Ex.1</u>,'217 Patent, 286:61-64.

The Court has not yet construed the term "predetermined identifier" because the parties in the prior litigation agreed that the term "predetermined identifier" did not require construction beyond its plain and ordinary meaning.  *See* <u>Ex. 10</u>, PMC's Omnibus Opening Claim Construction Brief (Dkt. 69, 2:15-cv-01754).  PMC takes effectively the same position here: the terms "identifier" and 'predetermined" should be given their ordinary meanings, informed by the context, as well as the customary understanding  by a person

of ordinary skill in the art. *See* Ex. 8, Phase 2 Order at 5 ("Each claim term is construed according to its ordinary and accustomed meaning as understood by one of ordinary skill in the art at the time of the invention in the context of the patent.") (citing *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312-1313 (Fed. Cir. 2005)). Specifically, the specification discloses that "signals may convey information in discrete words . . . that receiver apparatus must assemble" and that "[e]xamples of signal words are a string of one or more underline digital data bits encoded together on a single line," where "[s]uch strings may or may not have underline predetermined data bits to identify the beginnings and ends of words . . . ." Ex. 1, '217 Patent, 8:15-34 (emphasis added); *id.* 19:57-60 ("Said ROM and/or said EPROM may also contain one or more *digital codes* capable of identifying its controller, 39, 44, or 47[.]"). *See also* Ex. 9, '490 Patent, 11:18-24, 18:44-59.

TCL, in contrast, seeks to import a requirement that the identifier be determined before *any* signals have been received. That requirement cannot be gleaned from the plain meaning of "previously determined." But more importantly, TCL's proposed construction directly conflicts with the "context of the patent." TCL's proposed construction is duplicative of and incompatible with the rest of the claim language, which explicitly establishes a *different* requirement regarding the temporal relationship to receiving signals.

Under TCL's proposed construction, the claim would read, "comparing said processed identifier to [an Identifier determined prior to *receiving signals at the receiver*], wherein said [Identifier determined prior to *receiving signals at the receiver*] is determined at a time prior to *receiving said plurality of signals.*" TCL asks the Court to override the explicit claim language "prior to receiving said plurality of signals," thereby rendering that claim language superfluous. "[I]nterpretations that render some portion of the claim language superfluous are disfavored[.]" *Power Mosfet Techs., L.L.C. v. Siemens AG*, 378 F.3d 1396, 1410 (Fed. Cir. 2004).

In other words, the claim language explicitly sets forth the timing of the "predetermination," by reference to a *plurality* of signals, meaning two or more. If "predetermined" meant prior to receiving any signals, then the requirement that it be determined prior to receiving one or more signals would be entirely superfluous. TCL's proposed interpretation is, therefore, foreclosed. *See, e.g.*, *Becton, Dickinson & Co. v. Tyco Healthcare Grp., LP*, 616 F.3d 1249, 1257 (Fed. Cir. 2010) ("Claims must be "interpreted with an eye

4

F.3d 1302, 1305–07 (Fed. Cir. 2000) (refusing to adopt a claim construction which would

render claim language superfluous). Not only is such a construction unsupported by the plain understanding

of the term "predetermined identifier" – it is directly at odds with the surrounding claim language.

Finally, the extrinsic evidence supports PMC's straightforward construction. *See* Ex. 11, *Webster's

New Collegiate Dictionary* (1981) (pre•de•ter•mine . . . 1 . . . b: to determine beforehand 2: to impose a

direction or tendency on beforehand); Ex. 12, *McGraw-Hill Dictionary of Scientific and Technical Terms*

(3d ed. 1984) ("identifier" [COMPUT SCI] A symbol whose purpose is to specify a body of data).

### 5. **among said plurality of programmable processors**

| PMC | TCL |
|---|---|
| Between some or all of the programmable processors | Among each of the plurality of programmable processors in the receiver station. |

The parties' proposed constructions differ in two respects: (1) whether "among said plurality" means

"some or all" or "each" of the plurality of programmable processors; and (2) whether the processors must be

located "in the receiver station."

The Court addressed the same competing instructions in the Phase 2 Order, without oral argument,

and concluded that "among said plurality of programmable processors" means "among each of the plurality

of programmable processors." PMC urges again, that as one of ordinary skill in the art would have

understood the term, "among" does not mean "each." Indeed, Claims 109 and 110 of the '885 Patent, which

are not asserted in this case but follow closely on asserted claim 102, recite "processing . . . data at each of

said plurality of programmable processors." PMC's failure to use the word "each" in the affected claim

limitations proves that "each" was not intended.

The Court previously found that the file history of the '885 patent overrode the rule of claim

differentiation. Ex. 8, Phase 2 Order at 56. Specifically, in discussing the prior art (Yanagimachi reference)

PMC characterized the language "passing a first portion of said stream of digital data among said plurality

of programmable processors in a first passing fashion" in then-claim 158 as referring to "passing at least a

portion of said digital data to each of said plurality of programmable processors." Ex. 8, Phase 2 Order at

54. But the "each" term was not at issue in the office action—the issue was whether Yanagimachi disclosed

8, 2013, office action response where PMC similarly mentioned that then-claim 123 had a step of "passing at least a portion of said digital data to each of said plurality of programmable processors." Compare Ex. 13, Submission Under 37 C.F.R. §1.129(a) dated July 8, 2013 in *In re* U.S. Patent Application Serial No. 08/459,507 at 52 with Ex. 14 Response to Final Office Action dated January 15, 2014 submitted in *In re* U.S. Patent Application Serial No. 08/459,507, at 49 (using almost identical language). Critically, however, then-claim 123 actually used the word "each" in its claim language. *See* Ex. 13 at 24 ("passing at least a portion of said digital data to each of said plurality of programmable processors") (emphasis removed and added). PMC re-urges that the importation of "each" in claim 158's history was error -- to read then-claim 158 as referring to "each" processor would render superfluous the actual word "each" in then-claim 123. And it was harmless error, because "each" was not at issue. Thus, PMC's "each" characterization in the 2014 office action is not a "clear and unambiguous" disavowal of claim scope. *Epistar Corp. v. ITC*, 566 F.3d 1321, 1334 (Fed. Cir. 2009). Accordingly, this Court should reject the defendants' attempt to add this narrowing limitation to the claim term.

As for the added term "in the receiver station," as the Court declined to import this requirement into the claim term in its Phase 2 Order. There is nothing in the patent or its prosecution history that suggests the programmable processors must be limited to being located "in the receiver station."

**6. command[s]**

| PMC | TCL |
|---|---|
| Signal that causes performance of a function. | An instance of signal information that is addressed to a particular subscriber station apparatus and that causes said apparatus to perform a particular function or functions, and that always includes at least a header and an execution segment. |

The Court addressed the same competing instructions in the Phase 2 Order, and construed "command[s]" to mean "an instance of signal information that is addressed to particular subscriber station apparatus and that causes said apparatus to perform a particular function or functions. A command is always constituted of at least a header and an execution segment." Ex. 8, Phase 2 Order at 61.

As the specification discloses, preferred embodiments—the "pseudo command" and the "meter command"—are commands that are "addressed to no apparatus" and "do[] not instruct [any] processors . .

. to perform any controlled functions." Ex. 1 '217 Patent, 25:33-37. Although "[t]hese commands are always transmitted with meter-monitor segment data" there is no mention of a header or an execution segment that must also be part of the transmission. These commands allow for the "gathering [ o f ] ratings on conventional programming transmissions . . . without causing . . . controlled functions at inappropriate times" and f o r the "apparatus . . . to transmit meter information to buffer/comparator, 14, without performing any controlled function." *See id.* at 25:33-54. As Defendants' construction requires commands to be "addressed to a particular subscriber station apparatus" and to "always include[] at least a header and an execution segment," it runs afoul of the cardinal rule of claim construction that preferred embodiments should not be excluded. *See MBO Labs., Inc. v. Becton, Dickinson & Co.*, 474 F.3d 1323, 1333 (Fed. Cir. 2007). Defendants' construction also excludes an embodiment—"pseudo commands," which are "addressed to no apparatus." Ex. 1 '217 Patent, 25:34-35.

Moreover, for the purposes of construing "command[s]" in view of the claims (Claims 1 and 18 of the '650 Patent) in which they appear, the level of granularity of Defendants' construction would be needlessly confusing to a jury. *See Lexington Luminance LLC v. Amazon Digital Servs.*, No. 12-cv-12216-DKC, 2016 U.S. Dist. LEXIS 46023, at *38 (D. Mass. Apr. 4, 2016) (adopting plaintiff's construction because defendants' proposed construction "includes a series of details . . . that are likely to needlessly confuse the jury"); *Comcast Cable Communications, LLC v. Sprint Communications Co.*, 38 F. Supp. 3d 589, 621 (E.D. Pa. 2014) (rejecting defendant's proposed construction because "it includes detail that will needlessly confuse the jury without meaningfully impacting the questions of infringement and invalidity.")

The asserted claims already require "command[s]" to be directed at either "a said control processor" (Claim 1) or "said plurality of processors" (Claim 18). "Control processor" was construed by the Court in Phase One to mean "a processor that controls other devices or circuitry by processing control information." Therefore, the mention of a "subscriber station" (which term is not in dispute by the parties) or another addressed-to apparatus is not necessary, would not meaningfully impact questions of infringement and validity, and therefore should not be included in the Court's construction.

Similarly, both asserted claims also disclose as one of the limitations that "a plurality of" or "at least one" "command[s] in [a/said] message stream" are inputted to one or more apparatus. Again, at least with

respect to the 7-claim language at issue, details such as "at least one header and one xpedition segment" are irrelevant given the disclosure of "command[s] in [a/said] message stream" (which the parties agree is a "series of messages" each including at least "one header") and therefore should be excluded from construction to save the jury from unnecessary confusion. *Comcast Cable*, 38 F. Supp. 3d at 621.

Accordingly, the Court should adopt PMC's proposed construction of "command[s]" as "signal[s] that cause[s] performance of a function" because it is consistent with the specification, Ex. 1 '217 Patent, 23:52-57, 25:33-54, and effectively addresses the dispute over claim scope.

**7. control[ling] said digital switch**

| PMC | TCL |
|---|---|
| This term does not require construction beyond its plain and ordinary meaning. | Directly controlling said digital switch |

TCL improperly seeks to import the limiting term "directly" into an unambiguous claim term. There is no support in the claims, specification, or history for such a limitation.

The disclosures in the specification enable a skilled artisan to understand the plain and ordinary meaning of "control[ling] said digital switch." And none of the disclosures mandate, or justify importing the requirement that such control be "direct." To the contrary, the language TCL emphasizes in the '650 specification suggests that control need not be, and often is not, direct. The specification provides: "In *certain* SPAM functions, controller, 20, … controls control processor, 39J, and as FIG. 3A shows, control processor, 39J, *has means* for communicating control information *directly* with said controller, 20. ('217 Patent), 83:37-40. Likewise, controller, 39, …*has means* for communicating control information directly with controller." *Id.*, 83:49-52. All this goes to show that control *information may be* communicated directly between the control processor and the controller – it does not suggest that that communication *must* be direct every time, and it does not suggest that control of the digital switch is always direct.

Moreover, even *if* the Court were to read this passage to indicate that all control was "direct," this describes only one embodiment, and TCL inappropriately seeks to limit the term to that embodiment. There is no demonstrated intention, much less clear intention to limit the claim scope. *See Arlington Indus., Inc. v. Bridgeport Fittings, Inc.*, 632 F.3d 1246, 1254 (Fed. Cir. 2011) ("[E]ven where a patent describes only a single embodiment claims will not be read restrictively unless the patentee has

8

demonstrated a clear intention to limit the claim scope using words or expressions of manifest exclusion or restriction.") (citation omitted).

### 8.   Order of steps of claim 9 of the 6'649 patent

| PMC | TCL |
|---|---|
| The steps of claim 9 of the 6'649 patent need not be performed in the order disclosed. | "Programming" step is performed prior to the "inputting logic" step.<br><br>"Receiving one or more instruct signals step" is performed prior to the "inputting logic" step.<br><br>"Inputting logic" step is performed prior to the "Receiving a plurality of discrete signals" step. |

Ordinarily, the claims of a patent need not be performed in a specific order. *Interactive Gift Express, Inc. v. Compuserve Inc.*, 256 F.3d 1323, 1342-43 (Fed. Cir. 2001) ("Unless the steps of a method actually recite an order, the steps are not ordinarily construed to require one…However, such a result can ensue when the method steps implicitly require that they be performed in the order written.").

Claim 9 of the 6'649 Patent recites:

> 9. A method for receiving and outputting television programming at a programmable receiver station, said receiver station having a television receiver, a tuner, a tuner controller, a detector, a processor or computer, and a television monitor, said tuner controller receiving instructions from said processor or computer to control said tuner to frequency select television signals, said detector for detecting digital signals, said method comprising the step of:
>> programming said programmable receiver station with multiple signal processing schemes to process television programming signals encoded in variable formats in
>>
>> accordance with said multiple signal processing schemes, said variable formats including at least two of varying locations, varying timing lengths and varying encryption schemes;
>>
>> receiving one or more instruct signals;
>>
>> inputting logic into said processor or computer to enable said receiver station to receive and identify said variable formats in accordance with said one or more instruct signals;
>>
>> receiving a plurality of discrete signals identified according to a particular format of said variable formats, said plurality of discrete signals delivering at least a portion of television programming;
>>
>> processing said plurality of discrete signals according to one of said multiple signal processing schemes implemented by said one or more instruct signals to identify said particular format of said variable formats and demodulate or demultiplex said at least a portion of said television programming; and
>>
>> outputting said at least a portion of said television programming.

9

Ex. 4.

The Court has already determined that "the steps of 6'649 Patent claim 9 need not be performed in the recited order." Ex. 8, Phase Two Order at 75. Specifically, the claim language does not "'as a matter of logic or grammar' require[] that the steps be performed in a particular order," nor does it "directly or implicitly require[] such a narrow construction." *Id.* at 74 (quoting *Altiris, Inc. v. Symantec Corp.*, 318 F.3d 1363, 1369–70 (Fed. Cir. 2003)). The Court correctly rejected speculation that because the "inputting logic" step refers to "said variable formats," then the identity of the variable formats must be previously established in the "programming" and "receiving" steps. As PMC previously argued, the claimed system could anticipate the various formats and instruct signals that might be encountered by the receiver station could anticipatorily provide the necessary logic to process them. The Court recognized that the receiver station could "receive" signals of a particular variable format before it had been input with logic to receive and identify those signals – this would merely require the system to cache the signals until it later obtained the necessary logic to formally receive and identify them.

In sum, "[t]here is no reason (in the claims or specification) that the inputting logic step could not be performed before the programming step or the receiving one or more instruct signals step." *Id.* There is no basis to depart from the Court's prior construction of claim 9 of the 6'649.

### 9. Order of steps of claim 10 of the 6'649 patent

| PMC | TCL |
|---|---|
| The steps of claim 10 of the 6'649 patent need not be performed in the order disclosed. | "Programming" step is performed prior to the "inputting logic" step.<br><br>"Receiving one or more instruct signals step" is performed prior to the "inputting logic" step.<br><br>"Inputting logic" step is performed prior to the "Receiving a plurality of discrete signals" step. |

Claim 10 of the 6'649 patent is dependent on claim 9. TCL's arguments pertain only to the steps in claim 9 – arguments the Court has already rejected for the reasons stated above. Claim 10 of the 6'649 Patent recites:

> 10. The method of claim 9, further comprising one step of the group consisting of:
>
> > assembling at least one data message or unit of processor code based

said received plurality of discrete signals;

> processing computer data according to said one of said multiple signal processing schemes;
>
> processing a digital television signal according to said one of said multiple signal processing schemes;
>
> processing information to supplement or enable television programming according to said one of said multiple signal processing schemes;
>
> locating or identifying a plurality of control signal types according to said one of said multiple signal processing schemes.

Ex. 4.

Nothing about the several additional steps in claim 10 establish "as a matter of logic or grammar" that the steps in claim 9 must be now performed in a particular order. If anything, the addition of one of _several_ possible steps involving different actions (locating, processing, assembling) indicates flexibility, not rigidity. In short, there is nothing additional or different in claim 10 that would warrant departing from the presumptive rule, and this Court's previous ruling.

Dated: May 18, 2018                    Respectfully submitted,

By:  _/s/ Meng Xi_____
     S. Calvin Capshaw
     Texas Bar No. 03783900
     Elizabeth L. DeRieux
     Texas Bar No. 05770585
     CAPSHAW DERIEUX LLP
     114 E. Commerce Avenue
     Gladewater, TX 75647
     Telephone: (903) 233-4826
     ccapshaw@capshawlaw.com
     ederieux@capshawlaw.com

     Arun Subramanian
     Elisha Barron
     New York State Bar No. 4611869
     SUSMAN GODFREY L.L.P.
     1301 Avenue of the Americas, 32nd Fl.
     New York, NY 10019-6023
     Telephone: (212) 471-8346
     asubramanian@susmangodfrey.com
     ebarron@susmangodfrey.com

     Joseph S. Grinstein
     Texas State Bar No. 24002188
     SUSMAN GODFREY L.L.P.

Houston, TX 77002-5096
Telephone: (713) 653-7820
jgrinstein@susmangodfrey.com

Meng Xi
California State Bar No. 280099
SUSMAN GODFREY L.L.P.
1900 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067-6029
Telephone: (310) 789-3100
mxi@susmangodfrey.com

Dmitry Kheyfits
New York State Bar No. 4743795
KHEYFITS P.C.
1140 Avenue of the Americas, 9th Floor
New York, NY 10036
Telephone: (212) 203-5399
dkheyfits@kheyfits.com

*Attorneys for Personalized Media
Communications, LLC*

## CERTIFICATE OF SERVICE

I certify that on May 18, 2018, a copy of the foregoing document was served on the parties to this action by electronically filing true and correct copies with the Clerk of the Court using the ECM/ECF system which automatically sent notification by e-mail of such filing to the counsel of record.

_/s/ Meng Xi_
Meng Xi